[No. A071935. First Dist., Div. One. Nov. 25, 1996.]

LINSCO/PRIVATE LEDGER, INC., Plaintiff and Appellant, v.
INVESTORS ARBITRATION SERVICES, INC., Defendant and
Respondent.

[No. A071936. First Dist., Div. One. Nov. 25, 1996.]

ROYAL ALLIANCE ASSOCIATES, INC., et al., Plaintiffs and
Appellants, v.
INVESTORS ARBITRATION SERVICES, INC., Defendant and
Respondent.

1634

## COUNSEL

Zelle & Larson, David S. Markun, Craig M. Hughes and Brian E. Mahoney for Plaintiffs and Appellants.

R. King Prothro, Jr., and John R. Bobay for Defendant and Respondent.

## OPINION

DOSSEE, J.—We have consolidated for purposes of argument and decision two identical appeals arising from separate but virtually identical lawsuits seeking to enjoin defendant from the unauthorized practice of law. The trial court dismissed both lawsuits after granting defendant's motions to strike the complaints under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1] We conclude plaintiffs' lawsuits do not qualify as SLAPP suits, and we reverse the judgments.

### BACKGROUND

Within the securities industry, disputes between customers and securities broker-dealers are invariably resolved by arbitration pursuant to an arbitration clause in the customer-broker agreements. (See generally, *Shearson/American Express Inc.* v. *McMahon* (1987) 482 U.S. 220 [96 L.Ed.2d 185, 107 S.Ct. 2332].) Defendant, Investors Arbitration Services, Inc. (IAS), provides assistance and representation for a fee to individual investors who seek to pursue a claim in arbitration against a securities broker.[2] IAS is not a law firm, although it does have some attorneys on its staff. Its services are confined to securities arbitration matters. Plaintiffs are securities broker-dealers who have been faced with a substantial number of arbitration claims by investors represented by such nonattorney representatives.

---

[1]SLAPP is an acronym for strategic lawsuit against public participation. (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 858 [44 Cal.Rptr.2d 46].)

[2]Advertising by IAS touts IAS as "the largest and most successful Investment Recovery firm in the nation [whose] services include full time securities, accounting and legal expertise." One ad states: "Since Binding Arbitration became mandatory, the experienced staff of Securities and legal experts from [IAS] have recovered Millions of dollars in settlements for investors who have been victimized by losses resulting from: unsuitable recommendations; churning; unauthorized trading; excessive commissions; misrepresentation; limited partnership losses."

The issue of who may appear in arbitration proceedings is governed by rules promulgated by the securities industry.[3] Former section 27 (now section 10316) of the Code of Arbitration Procedure of the National Association of Securities Dealers provides: "All parties shall have the right to representation by counsel at any stage of the proceedings."[4] There is no provision for representation at arbitration proceedings by nonattorneys.

However, along with the Uniform Code of Arbitration, the Securities Industry Conference on Arbitration also drafted an arbitrators' manual as a guide for arbitrators "to supplement and explain the Uniform Code of Arbitration." The manual provides in pertinent part: "*Parties need not be represented by an attorney in arbitration. They may choose to* appear pro se (on their own) or *be represented by a person who is not an attorney*, such as a business associate, friend, or relative. The Uniform Code grants parties the absolute right to representation by counsel at any stage of the proceeding. . . ." (Italics added.)

Apparently because of that provision in the arbitrators' manual, nonattorney representatives have been allowed to appear in securities arbitration proceedings. But the practice has become controversial. In 1995 the Securities Industry Conference on Arbitration issued a report concluding that the activities of nonattorney representatives constitute the practice of law and may constitute the *unauthorized* practice of law under state law. The Securities Industry Conference on Arbitration recommended, among other things, that the self-regulatory organizations adopt a rule prohibiting representation by persons who would be precluded from doing so by state law; that the arbitrators' manual be amended to clarify that representation of parties in arbitration is subject to regulation by state law. We were informed at oral argument that no action has been taken on those recommendations.

---

[3]Plaintiffs are members of the National Association of Securities Dealers. Under the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), Congress has empowered the Securities and Exchange Commission (SEC) to supervise "self-regulatory organization[s]" such as the stock exchanges and the National Association of Securities Dealers. (15 U.S.C. §§ 78c(a)(26), 78f, 78o-3, 78s.) Each self-regulatory organization must register with the SEC and must adopt governing rules. (15 U.S.C. §§ 78c(a)(27), 78s(a).) The SEC is empowered to approve, alter, or amend the rules of the self-regulatory organizations. (15 U.S.C. § 78s(b), (c).) But as these organizations are "self-regulatory," Congress and the SEC have left the details to the self-regulatory organizations themselves. (See generally, *Gordon* v. *New York Stock Exchange* (1975) 422 U.S. 659, 667 [45 L.Ed.2d 463, 470, 95 S.Ct. 2598].) The SEC has not imposed any requirements for the conduct of arbitration proceedings by self-regulatory organizations.

[4]In 1977 the Securities Industry Conference on Arbitration was formed by the self-regulatory organizations to formulate uniform procedures for resolution of disputes through arbitration. That body drafted a Uniform Code of Arbitration, which was approved by the SEC and adopted by the National Association of Securities Dealers as its Code of Arbitration Procedure.

 In two separate lawsuits, plaintiffs sought to enjoin IAS from engaging in what plaintiffs allege is the practice of law.[5] IAS answered the complaints and then moved to strike the complaints on the ground that plaintiffs' lawsuits were SLAPP suits. The trial court granted the motion in both cases, denied reconsideration, and entered judgments in favor of IAS.[6] We conclude the trial court erred, as the lawsuits do not qualify as SLAPP suits.

## DISCUSSION

 Section 425.16 of the Code of Civil Procedure, the anti-SLAPP statute, is designed to expose and dismiss at an early stage nonmeritorious actions which are filed "to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civil. Proc., § 425.16, subd. (a).)[7] The remedy authorized by the statute is a special motion to strike any cause of action which arises from an "act of [the defendant] in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b); see generally, *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809 [33 Cal.Rptr.2d 446].)

The party bringing the motion to strike has the initial burden of making a prima facie showing that the lawsuit qualifies as a SLAPP suit, i.e., that it arises from an " 'act . . . in furtherance of [a person's] right of petition or free speech . . . in connection with a public issue.' " (*Wilcox* v. *Superior Court, supra*, 27 Cal.App.4th at p. 820; accord, *Dixon* v. *Superior Court* (1994) 30 Cal.App.4th 733, 742 [36 Cal.Rptr.2d 687].) We conclude that IAS failed to meet that burden.[8]

Subdivision (e) of Code of Civil Procedure section 425.16 defines an " 'act in furtherance of a person's right of petition or free speech . . . in

---

[5]Plaintiffs alleged three causes of action—declaratory relief, unlawful business practices (Bus. & Prof. Code, § 17200 et seq.), and civil conspiracy.

[6]Plaintiffs have filed two separate appeals—one from the order granting the motion to strike and another from the judgment. The order granting the motion to strike is a nonappealable, interlocutory order, and the appeal therefrom is dismissed.

[7]Subdivision (a) of section 425.16 of the Code of Civil Procedure provides: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."

[8]Once the defendant satisfies the threshold burden, the burden shifts to the responding plaintiff to demonstrate that there is a probability that the plaintiff will prevail on the claim. (Code Civ. Proc., § 425.16, subd. (b).) Because we hold that IAS failed to carry its initial burden, we need not decide whether plaintiffs established a probability of prevailing at trial.

connection with a public issue' " to include "[1] any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [2] any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or [3] any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."

IAS emphasizes that private, contractual arbitration proceedings qualify as "judicial proceedings" to which the litigation privilege of Civil Code section 47, subdivision (b)(2), applies. (*Moore* v. *Conliffe* (1994) 7 Cal.4th 634, 645-654 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417].) Consequently, IAS argues that its activities fall within phrases 1 and 2 of the statutory definition in Code of Civil Procedure section 425.16, subdivision (e). We reject the argument.

▇▇ Recently, in *Zhao* v. *Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909], we concluded that in light of the legislative history and the declared legislative purpose of the anti-SLAPP statute, the statute must be given a narrow interpretation. ▇▇ In accordance with that decision, we find two fatal flaws in IAS's attempts to characterize these lawsuits as SLAPP suits.

First, as we observed in *Zhao*, the Legislature contemplated that the anti-SLAPP statute would apply only to a limited sphere of activities, i.e., those closely tied to the right to petition and the freedom of speech. (48 Cal.App.4th at pp. 1127-1129.) Here, neither of those two rights is implicated by plaintiffs' lawsuits.[9] Certainly IAS's right to petition for redress of grievances remains unaffected by plaintiffs' lawsuits, as do the petition rights of the individual investors. Plaintiffs do not seek to restrict access to the arbitration forum; at most, plaintiffs challenge who may represent the investors within that forum. Nor do plaintiffs' lawsuits arise from IAS's exercise of free speech. (Cf. *Howard* v. *Superior Court* (1975) 52 Cal.App.3d 722, 726 [125 Cal.Rptr. 255].) Plaintiffs challenge IAS's *conduct*, its activities in a representative capacity on behalf of its investor-clients.

The second flaw in IAS's argument is the absence of a public issue. As we explained in *Zhao*, subdivision (e) of Code of Civil Procedure section 425.16

---

[9]In its brief, IAS asserts an infringement upon the constitutional right to pursue one's chosen profession. That right stems from the right of due process, not the freedom of speech. (E.g., *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 169-170 [65 Cal.Rptr. 297, 436 P.2d 297].)

identifies three examples of SLAPP suits. And the operative language in subdivision (e)—" 'in connection with a public issue' "—must be read into all three exemplifying phrases. (48 Cal.App.4th at p. 1127.) Specifically, we held in *Zhao* that within phrase [2] the "issue under consideration or review by a legislative, executive, or judicial body" must be a public issue. (*Ibid.*) We likewise conclude that within phrase [1] the statements made before an official proceeding must be on a public issue.[10] Were we to read phrase [1] as eliminating the requirement of a public issue, all actions coming within the privilege of Civil Code section 47, subdivision (b), would necessarily qualify as SLAPP suits and would thereby be subject to the drastic remedy of a special motion to strike.[11] ■ We have rejected such a broad reading of section 425.16, concluding instead that the anti-SLAPP statute applies only to lawsuits described by the statement of legislative purpose in subdivision (a) of section 425.16, i.e., those brought to chill "participation in matters of public significance." (*Zhao* v. *Wong, supra,* 48 Cal.App.4th at pp. 1120-1121, 1129.)

While proceedings before legislative and administrative bodies will more likely than not involve "matters of public significance," proceedings in a judicial forum (whether a court or an alternative forum such as arbitration) are just as likely to involve private issues as public issues. In *Zhao*, we held that an allegedly slanderous press interview did not involve a public issue even though the interview pertained to a pending will contest: "[T]he mere fact that a lawsuit was pending has no significance in determining the existence of a public issue. . . . [¶] The existence of a public issue depends rather on whether the statements possessed the sort of relevance to self-government that places them in a specially protected category of First Amendment values . . . ." (48 Cal.App.4th at pp. 1131-1132.)

■ We can say the same here. Although arbitration proceedings may arguably involve an exercise of the right of petition, the mere fact that IAS's conduct occurs within and pertains to arbitration proceedings does not create a public issue. IAS represents individual investors in disputes between those investors and their stockbrokers. Such disputes over individual investment losses are matters of private, not public, concern. Plaintiffs' lawsuits do not arise from statements "in connection with a public issue."

In summary, we conclude that IAS failed to carry its initial burden of showing that plaintiffs' complaints come within the scope of the anti-SLAPP

---

[10]IAS apparently concedes that phrase [3] is inapplicable here, as it was in *Zhao*. Phrase [3] is expressly limited to the use of a public forum in connection with a public issue.

[11]As we observed in *Zhao*, the language of phrase [1] within subdivision (e) of Code of Civil Procedure section 425.16 generally parallels the statutory privilege established by Civil Code section 47, subdivision (b). (48 Cal.App.4th at p. 1125.)

statute. Accordingly, the trial court erred in granting the special motions to strike, and we remand the matter for further proceedings on plaintiffs' complaints.

The judgments are reversed. Costs are awarded to plaintiffs-appellants.

Strankman, P. J., and Stein, J., concurred.